CENTRAL PASTO VIEJO, INC., Plaintiff and Appellant, *v.* ARTURO APONTE, JR., Defendant and Appellee.

No. 3367. Argued January 22, 1925.—Decided January 29, 1926.

1. DEBT—INTEREST.—There is no right to claim and collect interest on a debt when there has been no express agreement for its payment.
2. ID.—CURRENT ACCOUNT—EVIDENCE.—When there is a charge in a current account for an advance made by a draft which was collected in a bank for account of the drawer the draft is the best evidence to prove the charge; but if the draft is lost, notice by the bank to the drawer requesting payment and the entry made in the books of the drawer are meritorious evidence sufficient to prove the charge, especially when the weight of that evidence is not questioned.
3. ID.—ID.—ID.—The amount of a check having been charged in a current account, if the check is lost the books kept in the course of business and in which the charge is entered are sufficient evidence of the charge, especially when the said charge has not been denied and the objections to the introduction of the books refer to other matters related thereto.
4. ID.—APPEAL.—When the acts and conduct of an appellant do not convince the appellate court that the evidence as a whole does not support the conclusion reached by the lower court for adjusting the conflict in the evidence the judgment should be affirmed.
5. ID.—COSTS—JUDGMENT.—When a party does not recover judgment wholly as prayed for the lower court does not abuse its discretion in rendering judgment without special imposition of costs.

District Court of Humacao, Pablo Berga, J. Judgment for plaintiff on the first cause of action only and dismissing the defendant's counter-complaint without costs. *Reversed in part.*

*Henry G. Molina* and *González Fagundo & González, Jr.*, for the appellant. *Arturo Aponte, Jr., Carlos Travecier* and *Fernando Gallardo* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Central Pasto Viejo, Inc., a corporation engaged in the manufacture of sugar, brought this action to recover from defendant Arturo Aponte (1) the sum of $8,945.54 with interest at 9 per cent as the balance of an agricultural contract for planting and cultivating sugar cane and (2) the sum of $4,400 with interest at 8 per cent alleged to proceed from the price of the Fuentes property which the plaintiff sold to the defendant.

The lower court rendered judgment against the defendant for $6,956 of the current account, refusing to allow the charges of $40 and $430.14 because they had not been proved, and the charge for interest because it was not shown that its payment was expressly agreed upon. It rejected the item of $4,400 called "special account," accepting the theory of the defendant on this point, and dismissed the counter-claim filed by the defendant against the plaintiff.

The questions raised in this case by the plaintiff-appellant in two long briefs refer to each one of the items rejected by the lower court and are stated as follows:

"1. The court erred in holding that the evidence was insufficient to prove the charge of $40.00 made by the plaintiff in the agricultural account of the defendant on August 6, 1920.

"2. The court erred in holding that the evidence was insufficient to prove the charge of $430.40 ($430.14) made by the plaintiff in the agricultural account of the defendant on June 23, 1920.

"3. The court erred in holding that the defendant did not owe to the plaintiff the sum of $4,400 and interest, or any other amount as the purchase price of a part of the Fuentes property.

"4. The court erred in holding that the defendant was not bound to pay any interest to the plaintiff on the agricultural advances.

"5. The court erred in not imposing the costs on the defendant including the fees of the plaintiff's attorneys."

We shall consider first assignments 1, 2 and 4, for the lower court summarizes the evidence and its reasoning in relation thereto as follows:

"This cause of action is based on a current account which the plaintiff opened to the defendant by mutual agreement on or about the 25th of January, 1919, for sums of money and goods furnished under an implied contract of returning and paying for them, for the planting and cultivation of sugar cane, which fact has been admitted by the defendant, though he alleges that said account has never been liquidated, balanced or agreed to. Accounts current are always understood to be liquidated, for their liquidation depends upon a single arithmetical operation. *Blanco López & Co.* v. *Torres*, 25 P.R.R. 651; *Jiménez* v. *Alfonso*, 29 P.R.R. 300; *Armstrong & Co.* v. *Irizarry*, 29 P.R.R. 563. The plaintiff passed to the defendant statements of this account. The complaint is accompanied by Exhibit A, a statement of account up to July 13, 1921; and after the complaint was filed and at the request of the defendant, the plaintiff delivered to him general statements of the account dated April 7, 1919; June 14, 1919; April 28, 1920; June 30, 1920, and December 31, 1920. Rafael Baragaño also personally delivered to the defendant in July, 1921, a statement of account and on September 7, 1921, there was sent to him by registered mail another statement which he received. It can not be said from the result of the evidence that the defendant expressed his conformity to and approved the statements of account passed to him, except the one sent at his request with letter of April 22, 1920, which showed a balance of $5,083.13 in favor of the plaintiff. And we say that this statement of account was accepted because finally on May 26, 1920, the defendant made a payment thereon of $5,000. However the defendant has never agreed to the charges for interest. The account shows a balance in the plaintiff's favor of $8,945.54, including interest.

"At the trial the plaintiff moved to strike from the account the charge for compound interest amounting to $6.28 and left to the consideration of the court the question of simple interest for the reason that the Central has a right to charge it, that being customary in agricultural financing. In the complaint there is no allegation with respect to interest and the evidence did not show that any contract existed between the parties for its payment. An account current does not bear interest in the absence of an agreement between the parties, except from the date when suit is brought for

the balance. Furthermore, 'interest shall only be owed when it has been expressly stipulated.' Section 1657 of the Civil Code. Therefore, this court holds that it should strike out what relates to interest, or a total of $1,178.26, the account being thus reduced to $7,767.28.

"Under this same cause of action the plaintiff moved in open court during the trial for the deduction of all items relative to storage and fire insurance, which items amount to $107.16, the account being thus reduced to $7,660.12.

"At the trial the plaintiff also waived the charge 'Central Invoice' of June 3, 1920, for the sum of $20.00 which appears in the statement of June 30, 1920, and the items charged on August 31, 1920, for $112.35, and January 15, 1921, for $100.21, because they belong to another account. The defendant should also be credited with the sum of $1.00 which appears overcharged in the item of June 5, 1920, as per weekly statement 47 for $1,133.34, for the drafts issued for $888.18 and $244.16 in payment thereof amount only to $1,132.34. So that after deducting these amounts, which total $233.46, the account is reduced to $7,246.66.

"The evidence was not sufficient, in our judgment, to justify the charge of $40.00 of the item for $161.00, August 6, 1920, as per weekly statement No. 6, since the letter-order or draft of August 7, 1920, is only for the sum of $121.00, and that of $430.40 of the item for $844.92, June 23, 1920, as per weekly statement No. 50, since the letter order or draft of June 12, 1920, is only for the sum of $414.78. These amounts make a total of $470.40 which also should be deducted from the sum of $7,426.66, leaving a balance in favor of the plaintiff and against the defendant of $6,956.26 which has not been paid and which has been proved by the result of all of the evidence introduced."

An analysis of the evidence leads us to the same conclusion reached by the lower court, excepting, however, the charges of $40 and $430.14. We shall begin by considering the interest charge.

[1] The relations of intimate friendship existing between the defendant and José D. Riera, director and manager of the Central, perhaps due principally to his position of attorney for the corporation, seems to be an important fact for showing the motive for entering into an agricultural contract without, as the appellant says, "a letter or some

record referring to the agreement with the defendant when the financing account was opened." They are generally set out on printed forms with blank spaces which the Central had for all of its contracting cane growers. There is, then, no express stipulation for interest. The appellant maintains, however, that the defendant tacitly admitted the payment of interest when he was sent the numerous letters with the liquidations wherein the charge for interest appeared, and also expressly by his admissions during the conferences he had with witness Walker, vice-president of the corporation, when he was requested to pay the account. The defendant denied such admissions and likewise denied having received all of the said letters and liquidations. He only admitted having received three liquidations dated April 22, 1919, July 29, 1921, and September 7, 1921, and declared that on account of his special position with the management of the Central, he was not considered as an ordinary contracting grower and that instead of being sent bills and statements of account, the plaintiff allowed the defendant to ask for statements of his indebtedness. In connection with this the documentary evidence shows that the defendant wrote a letter to the plaintiff on April 19, 1919, which reads in part as follows: "To that end I request you to give the necessary orders in respect to that particular and at the same time inform me of the amount that I actually owe to the Central so that I may send you a check for the amount." The plaintiff replied on April 22nd and sent a statement of the current account wherein the charge for interest was made at the rate of 9 per cent. Then appears the defendant's letter of April 26, 1919, wherein he objected to the item for interest. The appellant analyzes this letter in detail, for it alleges that without that letter the acceptance of the interest charge was proved. Perhaps the appellant is right in pointing out a certain inconsistency of the defendant in referring to other items of his account, but from other circumstances it is not

adventurous to say that the defendant may have had an erroneous impression in pointing out those items. And as regards the statements of account of July 29, 1921, delivered by Baragaño personally to the defendant, and that of September 7, 1921, which was sent to him by registered mail, the account was already in dispute and they were prepared for the defendant's examination. Finally on September 12, 1921, the defendant requested a detailed statement of the account and, without receiving a reply, a few days later the complaint was filed.

The remittance of the various liquidations and different letters to which the appellant refers is attempted to be sustained principally by the testimony of the bookkeeper of the Central, Manuel Comas. His testimony is very long and the lower court gave no credit to his statements on that point. He testified that the letters for the growers were deposited by him in the postoffice after being typewritten by him. Another witness, Rafael Martínez Domínguez, one of the directors of the Central, said that there was a messenger who also used to take letters to the postoffice, and Comas finally admitted that there was another clerk who also used to typewrite the letters. The testimony of Comas on other points, as we shall see upon examining the third of the errors assigned, becomes so suspicious that it can not be relied upon. Likewise it seems that we can not be aided by what occurred at the two conferences that Walker and Baragaño had with the defendant, other witnesses of both parties being present. The lower court adjusted the conflict in the evidence without concluding that the defendant made the admission of interest and the record says nothing clearly that would not support the action of the court. The appellant insists strongly that witness Rafael Baragaño was an intimate friend of the defendant and that the latter could not doubt his statements. However, when his testimony is examined it may be seen that his attitude is rather hostile to the defendant and besides

we find a point in his testimony wherein, the witness having been flattered under the circumstances under which he seemed to find himself with certain promises which might influence his mind, it was not strange that the court would not give full credit to this witness. He was at that time manager of the Central, about to give up that position, and on cross-examination the following occurred:

"Mr. Baragaño, when you signed this document for Mr. Molina in Mr. Bertrán's office were you still manager of Central Pasto Viejo?—Yes, sir.

"Do you remember whether Mr. Walker offered in the house of Mr. Fuertes to defend you as a candidate for manager of Central Pasto Viejo and of the Yabucoa Sugar Company combined?—That is a personal matter that has nothing to do with this.

"But was that the subject of conversation?—I would not like to make any reference to that, because it is a personal matter.

"But did Mr. Walker say that or did he not, Mr. Baragaño?—I believe he did."

The appellant contends further as a question of law that it is of judicial knowledge that nearly all sugar manufacturing corporations have to get funds from the banks to cover the financing, and also that no officer has a right to take the money of the stockholders and deliver it to any person, even their attorney, without charging interest. The first is a question of fact and must be proved. The second may depend on the object or business in which the corporation is engaged. In banking corporations their business consists solely in the interest collected on loans. In those engaged in the sugar business, besides charging interest on agricultural financing, when agreed, the industrial benefit, which sometimes may be of a great margin according to the condition of the cane, is always acquired. Perhaps the plaintiff was contented with the industrial benefit, whether due to the special relations of the defendant with the former managers, Riera and Baragaño, or to the condition of his cane, for the record shows that the defendant had one-fourth above the price allowed the rest of the planters for

the Central which was indirectly credited to him "for hauling cane" so as not to excite the jealousy of the numerous planters demanding the same price for their cane or claiming the same privilege as any other planter by reason of his contract. It is not for us to criticize or investigate the right that the officers of the Central may have to make such concessions, for it is a matter exclusively for the directors and of care and attention, in the end, by the shareholders; but it is not surprising that the said officers may have been equally liberal in waiving to defendant the payment of interest. Therefore, the lower court committed no error in refusing to allow interest.

[2] The charge of $40 is an advance which appears included in the total sum of $161 entered in the weekly book of advances to planters. The total sum was delivered to the defendant in two items, one of $121 received by Elpidio Ramos by order of the defendant, and the remaining $40, the amount in dispute, in a draft which the defendant collected in the Commercial Bank of Porto Rico for account of the plaintiff and repaid by it to the said bank.

The best evidence, without doubt, to prove the charge would have been the draft itself, but it was alleged that the draft had been lost after its receipt by the plaintiff, for which reason secondary evidence was introduced. This did not consist solely of the testimony of the bookkeeper, Manuel Comas, who said that he saw it and had it in his hands. The lower court could have refused to take into account that statement alone, but it was not so reasonable to reject the probatory value of the Commercial Bank's notice to the plaintiff demanding payment of the draft, which says:

"Commercial Bank of Porto Rico.—Government Depositary.—Humacao Branch.—Humacao, P. R., 2 of August of 1920.—Central Pasto Viejo, Inc., Pasto Viejo.—Dear Sirs: We have received for your account the drafts listed below, whose amount we request you

to remit us in due time. Yours very truly. (sgd.) F. Rodríguez, Sub-Manager.

| No. | Drawer | Amount |
|-----|--------|--------|
| July 31 | Arturo Aponte, Jr. _____ | $40. 00 |
| " 31 | Miguel A. Bustelo_____ | 675. 00 |
| | | $715. 00'' |

This is a beginning of written evidence and if we connect it with the entry made in the weekly book of the Central, the evidence was meritorious and sufficient, for without anything that questions the weight of that evidence, its force is as primary as if it was the draft itself. The court erred in not finding the charge of $40 proved.

[3] The same may be said of the charge of $430.14. It appears joined to another item of $414.78 in the weekly book, both items making a total of $844.92. The second represented a draft which the defendant drew on the Commercial Bank for account of the plaintiff, and the first one of $430.14, the sum in controversy, originated from a check which the plaintiff issued to the defendant. The check was lost and secondary evidence was introduced. The weekly book No. 50, from the 12th to the 18th of June, 1920, was presented and showed the charge of $430.14 for a check issued under No. 903 in favor of the defendant. It is true that this evidence was admitted over the defendant's objection, but we should not overlook the fact that the plaintiff was unable to offer other evidence better than that admitted. The book is an auxiliary daybook kept in the course of business and the defendant did not deny absolutely the charge, but his opposition was limited rather to attacking the items for interest and those for storage and insurance. Nor does the defendant insist in his brief in discussing the merit of the items of $40 and $430.14, but argues only that as a double appeal has been taken, the second, which refers to the said sums of money, is invalid. The judgment was rendered on December 2, 1922. The appellant filed the first notice of appeal on December 6, 1922, and

specified therein the holding from which it appealed. It involved the interest, an item of $4,400 of a special account, and the costs. A second notice of appeal was filed as supplementary on December 30, 1922, and it referred to the items of $40 and $430.14. The second notice of appeal was filed within the period fixed by law. The case of *Veve* v. *Fajardo Sugar Growers Association*, 17 P.R.R. 997, is based on different grounds and the California cases cited by the appellee are not applicable, for we agree with the appellant that they originated by reason of the required security, which is not exacted in Porto Rico on appeal.

The sums of $40 and $430.14, therefore, should be added to the balance of $6,956.26 which the lower court allowed in its judgment, for although in the course of the evidence the defendant attempted to attack a certain item relating to an amount of sugar because he was credited with a price lower than that alleged to have been agreed upon, the court adjusted the conflict in the evidence against him and sustained the credit as it had been entered.

[4] Another item which was not allowed by the lower court was the sum of $4,400 entered in the books of the Central under the name of ''special account'' and not in the current account, the appellant setting up a distinction because of its character distinct from the items for agricultural financing. The lower court made a careful study of the evidence and summarizes its conclusions on that point as follows:

''It is alleged that statements of this special account were sent by mail to the defendant on January 7, 1921, and July 11, 1921, but we have not been convinced by the evidence that the defendant received them, or that he bound himself at any time to pay the amount represented by the account, or interest thereon, the said amount not having been included in the statement given personally by Rafael Baragaño to the defendant, or in the one sent him by registered mail on September 7, 1921, for which reason we find that the plaintiff has not proved the essential allegation of count 4 of its complaint of the acceptance by the defendant without objec-

tion of the statement. There being no conformity in this account, the juridical obligation sanctioned by section 1245 of the Civil Code does not exist.

"On the other hand, in the complaint it is alleged that the defendant has not paid the purchase price to the plaintiff, that is, the draft for $4,400, when in the deed of sale it is acknowledged that the price was received from the purchaser prior to its execution; and considering all of the circumstances as to how the transaction was made; of no charge having been made to the account of the defendant of the draft for $5,900 although it was paid and he had therewith obtained the property of 52½ acres on July 19, 1920, that is, before the plaintiff adopted the resolution on July 23, 1920, for the purchase from the defendant of the said property and the sale of the 32 acres; that the draft for $4,400 was issued simply in favor of Rafael Baragaño, the then representative of the plaintiff, for him to pay that amount to the defendant; that the sum represented by said draft was not included in the statements of account delivered to the defendant by Rafael Baragaño or sent to him by registered mail days before the filing of the complaint; that the property of 52½ acres on the date of the transaction had a greater value than $20,000, according to the uncontradicted testimony of witness Francisco Buxó, and that the plaintiff was interested in that property for the drainage of its swamps and abutting properties, lead us to the logical conclusion of the truth of the defendant's allegation, supported by his evidence, that the real consideration for the conveyance was the assignment which the defendant made to the plaintiff of his rights, that is, the option on the said property of 52½ acres, for which reason both properties were appraised, that of the defendant at $275 per acre and that of the plaintiff at $150 per acre in the valley and at $100 per acre on the hill, and that the draft for $4,400 was drawn to pay Rafael Baragaño, because in the deed of sale the value appears as received; therefore, that the defendant owes the plaintiff no amount for the item alleged in the second cause of action."

The lower court only adjusted the conflict in the evidence in favor of the defendant. If there is anything in this suit which may impress an unbiased mind, it is (1) the failure to include the said item in any of the statements of the account current alleged by the appellant to have been sent to the defendant, and (2) the reasons given

to justify such omission. On one side they are made dependent on the system of bookkeeping and on the other they rest on legal grounds.

The pertinent part of the testimony of witness Comas, bookkeeper of the Central, is as follows:

"If any debtor of yours incurs a new debt, in a new item, do you usually charge all the items in those accounts?—No, that depends; if the account is for advances, for anything, if for advances I charge it to advances; but not if it is for any other thing.

"In a current account with planters, or any other kind, do you as a professional, do you usually open three or four accounts with the same person?—In a given case, yes, sir.

"Are there many of those cases in these books?—No; that has been done only in your case.

"You mean to say that of all the planters for Pasto Viejo mine has been the only case?—Yes, it is the only case.

"Then it is the only one?—It is the custom in Pasto Viejo, if not in the system of bookkeeping, that if you have an account for agricultural financing, all the transactions for sugar cane financing are carried to that account and if you open another account for another thing, all the other charges which are not for financing are entered in that other account.

"Is that what is done at Pasto Viejo?—I repeat that it is the custom in bookkeeping.

"For how many years has Pasto Viejo been in existence?—Since the year 1915.

"And during that time it has been the only case?—It has been the only case since the books have been in my hands.

"Why did you open an account for the Fuentes property when in the draft it was said that it should be charged to the account of Arturo Aponte?—Because the transactions were entirely different."

The appellant's counsel, to support the witness, alleges:

"To us it is evident that a loan for $4,400 which represents the price of certain lands sold by the plaintiff to the defendant has nothing to do with another transaction entirely distinct for agricultural advances made on account of the expenditures for the planting of his cane. This is in the common or commercial sense. Now from the legal point of view the agricultural advances had a character distinct from the loan of $4,400, the advances having preference by

virtue of the provision of section 1823, paragraph 6, of the Civil Code, while the deferred purchase price had no preference, for it was not secured by mortgage or in any other way. Consequently, it should not have surprised the lower court, and surely the minds of this court will not be affected in any way by the fact that a new account was opened in the defendant's name in the plaintiff's books with the item of $4,400 instead of charging it to the agricultural financing account."

If these were the real reasons for making a "special account" of the charge for $4,400, what reason may justify, *pari materia,* the drawing of a draft by the defendant against the plaintiff for the purchase of an automobile and charged in the current account for agricultural financing instead of being the object of the special account? In another part of the testimony of the bookkeeper we find the following:

"Do you know whether after the remittance of said account any money was advanced to Mr. Aponte for the purchase of a Packard?—Yes, sir.—How do you know it?—I know it because there came a draft against the Treasurer in favor of the Packard Motor Dealers."

And exhibit No. 3 shows the entry of $1,200 made in the account current for agricultural financing. Likewise, there is another item for "sale of 10 loads of fire wood" charged in the financing account.

All this raises strong suspicions as to the existence of the so-called "special account" and gives more color to the defendant's contention that as it was not really owed, it never was the object of a charge in the books of the Central.

It is insisted, however, by the appellant that it sent to the defendant copies of the "special account" on January 7, 1921, and on July 11, 1921. There is nothing in the record that shows the remittance of such copies on the dates stated. Witnesses Comas and Walker were not in accord as to the essential details of that of July 11, 1921.

While the latter said that such copy had been is his hands and was typewritten, at least the figures, the former said that it was handwritten and no carbon copy was kept. Hence the small weight of that evidence.

The evidence tended to show that the Janer property of 52½ acres was leased to the defendant with an option to purchase it for the agreed price of $10,000 at the termination of the lease. The property was bounded by lands of the appellant and during the term of the lease this party, with a revocable permit from the defendant, built a drainage canal on the leased premises which drained other properties of the appellant. That canal was important, according to the testimony of manager Baragaño. The defendant was interested in a portion of the Fuentes property which adjoined his lands. In the transaction the appellant exacted the transfer of the option to it, but contends that the agreement was simply that it should sell the portion of the Fuentes property to the defendant for the price of $4,400 and buy independently the Janer property for $10,000 and not, as the defendant alleges, that the option was assigned to the appellant in exchange for a piece of the Fuentes property which appraised at $4,400 is the difference of $14,437.50, the appraised value of the Janer property, after covering the original price of the option ($10,000) and deducting the small amount of $37.50. During the negotiation the original owner of the Janer property transferred it to a third person. Without stopping to examine the effects of the option in relation to that transfer, the fact is that the defendant nevertheless acquired the property from the third person for the price of $10,900 which he paid, retaining $5,000 to satisfy a mortgage for that amount on the property and paying the remaining $5,900 in a draft drawn by the defendant and paid by the Commercial Bank for account of the appellant. Of this draft no entry was made in the books of the appellant. The fact that the defendant did not acquire for himself the Janer property, for

five days later he deeded it to the appellant, is rather apparent. Although in a more formal or stricter system of bookkeeping the corporation was not excusable for failing to enter the said sum in the account of the defendant, the true reason·for its not doing so was due to the fact that the defendant was not really a debtor for that amount. The same seems to be inferred as to the sum of $4,400. On the same day that the deed to the Janer property was executed, July 24, 1920, the appellant subsequently appears as selling a part of the Fuentes property to the defendant for $4,400, value received. Manager Baragaño received, however, a draft in his personal favor for the appellant's account. It may readily be seen that the form of payment elected was not the most usual. It was more logical that if the deed did not state the truth as to the acknowledgment of receipt of the price by the appellant, a notice or letter to the appellant would have been a sufficient means for clearing up the point, if anything else was true and it was agreed that payment should be postponed. This is another circumstance to be added to those already discussed that give more color to the explanation of the defendant when he says that the draft was drawn to satisfy a personal scruple of manager Baragaño, for, as he acknowledged receipt of the price in the appellant's name, he wanted to have a voucher against what the deed said to the contrary. In spite of this, Baragaño endorsed it to the appellant as follows:

"Pay to Central Pasto Viejo, Inc., San Juan, P. R., for account of Mr. Arturo Aponte, Jr., and to be credited to rural properties, as the value of thirty-two acres of land sold to him from the Fuentes property on this same date.—Humacao, P. R., July 24, 1920.— (Sgd.) Rafael Baragaño."

Baragaño admitted, on the other hand, that the date of the endorsement appears with some correction and did not remember whether the endorsement was made on the same date which the document bears. In the book of current

accounts (loose leaves) the charge appears as made on August 2, 1920, and the leaf contains that entry only; but in relation to the probatory value which that book may have, witness Comas testified as follows:

"Tell me, Mr. Comas, can the leaves of these books be taken out?—Yes, sir.

"Can the leaves be taken out?—Yes, sir.

"When you have made a mistake or found an error, do you change the leaves?—No, that is not customary; if I make a mistake I make a credit of the charge, as an item that is there which I charged and then credited.

"I do not refer to that, but to an account of one person taken as that of another, have you made such a mistake and changed the leaves?—No, no. That has not occurred.

"And if it had?—The leaf is taken out."

According to this evidence, it should have been completed with the entry which should have been made in the daybook to be carried to that of the account current. At least the daybook, although it would not have been a record which in itself would have proved the appellant's contention, would have at least removed all suspicion in respect to the possibility of a change of leaves having been made in the loose leaves of current accounts.

The resolution of the shareholders on which the appellant finally relies does not appear sufficiently clear of itself to justify the allegations of the complaint. Besides, the board of directors had already agreed on the transaction and the consummation of the agreement had also been initiated by the purchase by the defendant of the Janer property. The president of the corporation, Rafael Fabián, corroborates more or less that point, as follows:

"Mr. Fabián, will you kindly tell the court whether or not the transaction had already been made when this resolution approving or authorizing the sale was passed?—It had been made, always subject to approval by the board of directors."

If the resolution of the shareholders, the only authority as alleged, under the articles of incorporation authorized to

dispose of the real property, is not in accord with the acts of the agents who participated in the transaction, that is not a question raised or at issue in this suit.

Therefore, we could not have been convinced by the conduct and acts of the appellant that the evidence as a whole does not sustain the conclusion of the lower court in the sense that the sum of $4,400 represented the consideration for the option to purchase the Janer property which the defendant assigned to the appellant.

[5] We do not find reasons to sustain the error assigned in the matter of costs. The plaintiff did not recover a judgment favorable to all of its prayers and the lower court did not abuse its discretion in rendering judgment "without special imposition of costs."

In short, the judgment of the lower court should be reversed in so far as it refused to allow the items of $40 and $430.14, it being adjudged that the plaintiff recover from the defendant the said sums in addition to that of $6,956.26 allowed by the said judgment, or a total of $7,426.40, and affirmed on all other points appealed from by the plaintiff.

Mr. Justice Wolf dissented.